*E-Filed 6/3/11*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

KAROL DAVENPORT,

        Plaintiff,

   v.

LITTON LOAN SERVICING, LP, et al.,

        Defendants.

No. C 10-0679 RS

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

I.  INTRODUCTION

On July 10, 2011, this Court granted a motion to dismiss brought by defendants Litton Loan Servicing, LP ("Litton"), Credit-Based Asset Servicing and Securitization, LLC ("C-BASS"), and U.S. Bank, North America ("U.S. Bank"). Plaintiff Karol Davenport has amended her Complaint (the "Second Amended Complaint" or "SAC"). She advances seven claims for relief against her original lender, First Financial & Real Estate Services ("First Financial"); the servicer of her loan, Litton; the original trustee, C-BASS; the company who purchased her home at foreclosure sale, U.S. Bank; and others.[1]  Defendants U.S. Bank and Litton move here to dismiss the five claims advanced against them: (1) for violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C.

---

[1] Davenport voluntarily dismissed defendant Commonwealth Land Title Company from her Complaint.  C-BASS filed for bankruptcy protection in the Southern District of New York and does not join this motion.  First Financial has answered the Complaint.

§ 2601, *et seq.*; (2) declaratory relief; (3) fraudulent concealment; (4) elder abuse; and (5) Unfair Business Practices, in violation of section 17200 of the California Business and Professions Code. Defendants' motion was deemed appropriate for resolution without oral argument, pursuant to Civil Local Rule 7-1(b).

## II.  RELEVANT FACTS

The factual background was described in detail in the Court's first Order on defendants' Motion to Dismiss, and need not be repeated at length here. Davenport alleges that in September of 2006, her then-lender Citigroup (who is not a party in this case) contacted her by telephone. A representative of that bank warned her that, should she refuse to refinance her existing loan, she would likely lose her home. The representative referred Davenport to the services of another lender, defendant First Financial. Thereafter, Davenport dealt largely with a First Financial employee named Kruger. Although Davenport avers she responded truthfully to Kruger's inquiries as to her background, Kruger subsequently overstated her monthly income by $2,200 on a loan application form. Davenport eventually received by mail a thirty page loan agreement with explicit instructions from First Financial requiring her signature within seventy-two hours. She contends she found the language in the document confusing, and at the very least, was unsure if its terms were identical to those she discussed with Kruger. When she tried to contact him, Kruger responded only on the third and last day. He assured her, according to Davenport, that the document reflected the wishes she expressed in their prior conversations. When Davenport pointed out that several pages were not filled out, Kruger explained it was customary for the lender to complete the missing information after the borrower signed and returned the paperwork. Davenport did so within the seventy-two hour period. A week later, the loan closed. It was secured by a deed of trust on the property and duly recorded in Contra Costa County on December 5, 2010.

Davenport satisfied her monthly loan obligations for three years through January of 2009, at which point she was not able to make further payments. She admits her default ensued. She explains, however, that she attempted to negotiate a refinance agreement with Litton, the loan servicer. According to Davenport, Litton "in bad faith" refused, even though Davenport points out

1  the company accepted federal funding designed to encourage loan modifications. Although
2  Davenport acknowledges that she knew Litton Loan acted as her servicer, she complains that she
3  was never formally notified by Litton of its "role" as such. On April 9, 2009, Quality Loan Service
4  ("QLS") recorded a notice of default on behalf of C-BASS and it recorded a notice of sale on July
5  13, 2009. QLS recorded a substitution of itself as trustee on May 21, 2009. Davenport received
6  copies of these notices by mail (although she previously argued, unsuccessfully, that defendants did
7  not fully comply with the notice requirements of California Civil Code section 2924 because the
8  notices were not sent via certified mail).

9      The defendants held a trustee's sale on August 13, 2009 and U.S. Bank purchased the
10 property. On September 2, 2009, U.S. Bank served Davenport with a notice to vacate. She
11 commenced this action on December 7, 2009. On February 11, 2010, U.S. Bank filed an unlawful
12 detainer action against Davenport in the Superior Court of Contra Costa County, seeking possession
13 of the property. On April 26, 2010, the superior court granted U.S. Bank's motion for summary
14 judgment.

## III. DISCUSSION

### A. Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6)

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court accepts a plaintiff's factual allegations as true and construes the complaint in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). Dismissal is appropriate where a complaint lacks "a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (citation omitted). In the context of a Rule 12(b)(6) motion, a district court generally may not consider material beyond the pleadings. *Fort Vancouver Plywood Co. v. United States*, 747 F.2d 547, 552 (9th Cir. 1984). The exception is material which is properly submitted as part of the complaint. *Amfac Mtg. Corp. v. Arizona Mall of Tempe*, 583 F.2d 426, 429-30 (9th Cir. 1978). Here, a copy of the deed of trust and a notice of foreclosure were submitted as part of the SAC. A court may also take "judicial notice" of matters of public record outside the pleadings and consider them when

No. C 10-0679 RS
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

deciding upon a motion to dismiss. *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988).[2]

To state a claim for relief, Federal Rule of Civil Procedure 8(a)(2) demands that a pleading include a "short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has instructed that this mandate does not require "detailed factual allegations," but "demands more than an unadorned, the-defendant-harmed-me accusation" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Id.* (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The tenet that allegations are construed in a light favorable to the plaintiff does not apply, however, to bare legal conclusions. *Twombly*, 550 U.S. at 555 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Even where the plaintiff alleges something more than a bare legal conclusion, *Twombly* requires a statement of a plausible claim for relief. *Id.* at 544. Weighing a claim's plausibility is ordinarily a task well-suited to the district court but, where the well-pleaded facts do not permit the court to infer more than a mere *possibility* of misconduct, the complaint has not shown the pleader is entitled to relief. *Iqbal*, 129 S. Ct. at 1950.

B. Federal Rule of Civil Procedure 9(b)

Federal Rule of Civil Procedure 9(b) provides that "[i]n allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To satisfy the rule, a plaintiff must allege the "who, what, where, when, and how" of the charged misconduct. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). In other words, "the circumstances constituting the alleged fraud must be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. U.S.A.*, 317 F.3d 1097, 1106 (9th Cir. 2003). By

---

[2] Defendants ask that the Court take judicial notice of the superior court's order granting U.S. Bank's motion for summary judgment on its unlawful detainer claim.

No. C 10-0679 RS
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

4

contrast, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. Pro. 9(b). Moreover, "[i]n the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme." *Swartz v. KPMG, LLP*, 476 F.3d 756, 765 (9th Cir. 2007) (*quoting Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989)).

## IV. DISCUSSION

### A. Collateral Estoppel

Defendants argue Davenport is collaterally estopped from raising those claims that assume some defect in title that would render the foreclosure sale invalid. They claim this is so because U.S. Bank successfully attained an unlawful detainer judgment against Davenport in April of 2010. To attain such a judgment, the purchasing party at a trustee's sale must demonstrate that it acquired the property at a regularly conducted sale and thereafter "duly perfected" title. *See Vella v. Hudgins*, 20 Cal. 3d 251, 255 (1977); Cal. Code. Civ. Proc. § 1161a(3).

The doctrine of res judicata, whether applied as a total bar to further litigation or as collateral estoppel, "rests upon the sound policy of limiting litigation by preventing a party who has had one fair adversary hearing on an issue from again drawing it into controversy and subjecting the other party to further expense in its reexamination." *Vella*, 20 Cal. 3d at 257 (quoting *In re Crow*, 4 Cal. 3d 613, 622-623 (1971)). Where a court has decided an issue of law or fact necessary to its judgment, the doctrine of collateral estoppel in particular may prevent re-litigation of that issue by the same party in a subsequent suit on a different cause of action. *See, e.g.*, *San Remo Hotel, L.P. v. City and County of San Francisco*, 545 U.S. 323, 336 (2005). To rely on collateral estoppel, defendants must show the following: (1) the issue necessarily decided in the prior proceeding is identical to the one sought to be re-litigated; (2) the previous proceeding terminated with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party to or in privity with a party in the prior proceeding. *Syufy Enterprises v. City of Oakland*, 104 Cal. App. 4th 869, 878 (2002). The entire inquiry presumes a "full and fair hearing" on the issue. *Vella*, 20 Cal. 3d at 257.

As the California Supreme Court has explained, a judgment in unlawful detainer normally has limited preclusive effect and will not prevent one who is dispossessed from "bringing a subsequent action to resolve questions of title" or to "adjudicate other legal and equitable claims between the parties." *Vella*, 20 Cal. 3d at 255.  This is because the proceeding is summary in character—"ordinarily, only claims bearing directly upon the right of immediate possession are cognizable." *Id.* (citations omitted).  Moreover, cross-complaints and affirmative defenses are permissible only insofar as they would, if successful, "preclude removal of the tenant from the premises." *Id.* (*quoting Green v. Superior Court*, 10 Cal.3d 616, 634 (1974)).  As the Court in *Vella* indicated, however, "[a] qualified exception to the rule that title cannot be tried in unlawful detainer is contained in Code of Civil Procedure section 1161a, which . . . provides for a narrow and sharply focused examination of title." *Id.* at 255.  "To establish that he is a proper plaintiff," the Court explained, "one who has purchased property at a trustee's sale and seeks to evict the occupant in possession must show that he acquired the property at a regularly conducted sale and thereafter 'duly perfected' his title." *Id.* (citing Cal. Civ. Proc. § 1161a(a)).  Accordingly, "to this limited extent, as provided by the statute," the Court in *Vella* recognized that "title may be litigated" in an unlawful detainer proceeding. *Id.*

U.S. Bank insists this is exactly what it was required to do here.  Davenport points out that, as an initial matter, she could not have brought the bulk of the SAC's claims as counterclaims.  Although some of her claims assume an inherent title defect, she argues they are more complicated and nuanced and would not have been appropriately raised in an unlawful detainer action. At a more basic level, however, there is a question as to whether the unlawful detainer judgment was rendered as a result of a "full and fair" hearing.  Defendants have attached only their motion for summary judgment in the unlawful detainer action, and a copy of the superior court's summary grant.  Davenport was unrepresented at that time, and does not appear to have filed any papers in opposition or to have attended the hearing (if a hearing took place).  As the Court in *Vella* indicated, "We agree that 'full and fair' litigation of an affirmative defense—even one not ordinarily cognizable in unlawful detainer, if it is raised without objection, and if a fair opportunity to litigate

is provided—will result in a judgment conclusive upon issues material to that defense." 20 Cal. 3d at 256-57. In the next sentence, however, the Court continued: "In a summary proceeding such circumstances are uncommon." *Id.* at 257. The Court went on to deny preclusive effect, complaining that the unlawful detainer record was "virtually barren." *Id.* The hearing was not transcribed, and no findings of law or fact were made. *Id.* The same is true here, and there is some question as to the preclusive effect of the prior judgment. Because Davenport's claims may be resolved on the merits, however, this Order need not determine the preclusive effect of the unlawful detainer judgment against Davenport.

B. RESPA

Litton moves to dismiss Davenport's RESPA claim. Davenport argues Litton violated RESPA section 2605 when it failed to notify her that it had adopted the role of servicer. The deed of trust nowhere identifies Litton as such, and Davenport complains the notification failure inflicted "damages" in an amount to be later determined. Section 2605(b)(1) indeed requires that "[e]ach servicer of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person." "If a loan servicer fails to comply with the provisions of [section] 2605, a borrower shall be entitled to 'any actual damages to the borrower as a result of the failure' and 'any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of [section 2605].'" *Copeland v. Lehman Bros. Bank, FSB*, No. 09-1774, 2010 WL 2817173, at *3 (S.D. Cal. July 15, 2010) (citing 12 U.S.C. § 2605(f)(1)(B)). Litton concedes the violation but insists Davenport has not alleged either that she experienced any resulting harm or that Litton's failure reflected a pattern or practice.

Courts in the Ninth Circuit have interpreted the loss requirement liberally; evidence of pecuniary loss is persuasive, and some courts have considered an averment of emotional harm sufficient to recover actual damages under RESPA. *See, e.g.*, *Apodaca v. HSBC Bank USA*, No. 10-0307, 2010 WL 1734 945, at *3-4 (S.D. Cal. Apr. 7, 2010). It is the plaintiff's pleading obligation to "point to some colorable relationship between his injury and the actions or omissions that

No. C 10-0679 RS
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

allegedly violated RESPA." *Allen v. United Fin. Mortg. Corp.*, No. 09-2507, 2010 WL 1135787, at *5 (N.D. Cal. March 22, 2010) (dismissing RESPA claim where plaintiff alleged "actual damages" including falling behind on mortgage payments, negative credit impact, and emotional distress, but failed to allege any causal relationship between the damages and the RESPA violations). Such a pleading requirement has the effect of limiting the claim for relief to circumstances in which plaintiffs can show that a notice failure has caused them actual harm. *Lawther v. Onewest Bank*, No. 10-0054, 2010 WL 4936797, at *6 (N.D. Cal. Nov. 30, 2010). Here, Davenport makes plain in the SAC, for example, that she was aware Litton acted as a servicer because it was to this party that she turned for a loan modification. She does not argue that she ever sent her monthly payments to the wrong entity or otherwise indicate why formal notice would have changed her situation in any way. As Davenport has not included any facts to help explain her theory of how the alleged notice failure caused her harm, the RESPA claim must therefore be dismissed.

### C. Declaratory Relief

Davenport contends an actual controversy exists between the parties regarding defendants' respective rights and duties under the deed of trust. Ultimately, Davenport posits that certain errors render any of the defendants powerless to foreclose on her property, thereby throwing the legality of U.S. Bank's purchase into doubt. In her own words, she claims that "there are defects in the chain of title, which began with the [d]eed of [t]rust and continued to the August 13, 2009 foreclosure sale, rendering the sale invalid as a matter of law." (Pl.'s Opp'n at 7:26-28.) The purported "defect" relates to a failure to record (and thereby notify Davenport of) any assignment of the *beneficiary*'s interest. Apparently, First Financial (the original beneficiary) sold its interest in Davenport's loan, without notifying Davenport or recording the fact, to an entity that appears to have done exactly the same thing. What Davenport fails to do, is cite to any legal authority—statutory or otherwise—to suggest such a notice or recordation requirement actually exists, much less that a failure to notify Davenport of assignment renders any resulting sale at foreclosure *void*.

Indeed, the deed of trust itself provides that the beneficial interest may be sold one or more times without notifying Davenport.[3] Defendants' motion must therefore be granted.

### D. Fraudulent Concealment

Defendants move to dismiss Davenport's fraudulent concealment claims as either inadequately pleaded pursuant to Federal Rule of Civil Procedure 9(b) or implausible on the merits. Davenport again alleges that she did not "receive[] any documents pertaining to the securitization, sale, transfer, or assignment of her loan, nor any documents relating to a substitution of trustee or servicer for the loan." (SAC ¶ 56.) As to U.S. Bank and Litton in particular, Davenport alleges they "concealed material facts from Plaintiff, including but not limited to, the fact that they were not actually the servicer, the beneficiary, and the purchaser in due course, as such interests had never been recorded with the Contra Costa County Recorder's Office and do not appear on the title to the Property." (SAC ¶ 58.)

Litton and U.S. Bank complain that these allegations do not satisfy the heightened pleading requirement of Rule 9(b). They argue Davenport fails to pinpoint *which* defendants had such a duty to disclose, or to identify exactly when these omissions occurred. That said, the SAC as a whole provides sufficient information to notify U.S. Bank and Litton as to what, exactly, she alleges, namely that: (1) Litton failed to notify Davenport formally of its role as servicer (this is essentially the heart of her RESPA claim); and (2) U.S. Bank is not a valid "purchaser" because of the purported title defects raised in her declaratory relief claim.

While Davenport's fraud claim might survive Rule 9(b) scrutiny, it fails on the merits. To state a claim of fraud, a plaintiff must plead: (1) a false representation, concealment, or nondisclosure; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage. *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996). As explained in the section addressing her RESPA claim, Davenport has not alleged how or why Litton's failure to notify her of its role as servicer caused her any harm. Similarly, she has not explained why any

---

[3] To the extent Davenport's focus on the multiple assignments of the beneficial interest is an attempt to re-raise her "holder of the note" theory presented in the FAC, she is reminded that the prior Order dismissed this argument with prejudice.

1  defendant had a duty to notify her of assignments of the beneficiary interest, has not provided any
2  legal basis as to why multiple, unnoticed assignments of the beneficiary interest would render the
3  sale to U.S. Bank void, or why notice of such an assignment would have changed her position in any
4  way.  The fraudulent concealment claim, at least as alleged against U.S. Bank and Litton, is not
5  viable and must be dismissed.

### E. Elder Abuse

Davenport relies on California's Elder Abuse Act for the argument that defendants committed actionable financial abuse.  As a general matter, a plaintiff must demonstrate that a defendant: (1) subjected an elder to statutorily-defined physical abuse, neglect, or financial abuse; and (2) acted with recklessness, malice, oppression, or fraud in the commission of the abuse.  *See Von Mangolt Hills v. Intensive Air, Inc.*, No. 06-03300, 2007 WL 52122, at *2 (N.D. Cal. Feb. 15, 2007).  Where a plaintiff alleges financial abuse, she must allege that an entity: (1) takes, secretes, appropriates, or retains real or personal property of an elder or dependant adult to a wrongful use or with intent to defraud, or both; or (2) assists in doing the same for a wrongful use or with intent to defraud, or both; or (3) does or assists in doing the same through undue influence.  Cal. Welf. & Ins. Code § 15610.30(a).  As to U.S. Bank, Davenport alleges that, by "foreclosing on" Davenport's property, that defendant "took, and/or assisted in the taking of real property . . . for its own wrongful use and/or with the intent to defraud."  Litton, she claims, engaged in modification discussions with Davenport even though certain "pooling and servicing agreements prevented modification."  (SAC ¶ 89.)  This behavior, she posits, also runs afoul of the Act.

As indicated above, Davenport has not pleaded facts plausibly suggestive of a chain of title defect that would render U.S. Bank's purchase of the property void, much less facts to suggest U.S. Bank did so with the requisite malice.  The claim must therefore be dismissed.  Nor has she alleged facts to indicate that Litton's modification discussions resulted in the "taking or retention" of property for a wrongful purpose or with the intent to defraud. It was, after all, her failure to meet her loan obligations that resulted in foreclosure, not Litton's refusal to modify her loan's terms (absent

1  some duty to do so). The fact that Davenport is an elder within the meaning of the statute does not
2  make the foreclosure process itself unlawful.

   F.   California Business & Professions Code section 17200

U.S. Bank and Litton also move to dismiss Davenport's claim that these defendants violated California's Unfair Competition Law ("UCL"). Cal. Bus. & Prof. Code § 17200. That statute prohibits acts or practices that are: (1) fraudulent; (2) unlawful; or (3) unfair. *Id.* Each prong of the UCL constitutes a separate and distinct theory of liability. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009). Davenport has not, as explained above, identified any plausible "unlawful" acts of either moving defendant, and her attendant UCL claim therefore cannot proceed on that basis. The same is true as to the statute's fraudulent prong. That leaves the "unfair" prong, which proscribes a "business practice" which "violates established public policy or . . . is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *McKell v. Wash. Mut., Inc.*, 49 Cal. Rptr. 3d 227, 240 (2006).[4]

As to Litton, Davenport characterizes its practice of engaging in loan modification discussions as unfair. Litton, she suggests, either had no intention, or was indeed not contractually capable of, modification. To add insult to injury, Davenport also alleges that Litton accepted federal

---

[4] Historically, California courts subjected a plaintiff's UCL unfairness claims to a balancing test. Under that test, determining whether a business practice is unfair "involves an examination of [that practice's] impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer. In brief, a court weighs the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *McKell v. Wash. Mut., Inc.*, 49 Cal. Rptr. 3d 227, 240 (2006) (alterations in original and citations omitted). In *Cel-Tech Communication, Inc. v. Los Angeles Cellular Telephone Company*, the California Supreme Court rejected that test and instead held that in a claim brought by a competitor, "any finding of unfairness . . . [must] be tethered to some legislatively declared policy." 20 Cal. 4th 163, 185 (1999). Yet, because *Cel-Tech* expressly limited its holding to competitor lawsuits, the appropriate test to determine whether a practice is "unfair" in a consumer case under California law remains uncertain. *See Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 735 (9th Cir. 2007) ("California's unfair competition law, as it applies to consumer suits, is currently in flux . . . ."). *Compare Smith v. State Farm Mutual Automobile Ins. Co.*, 93 Cal. App. 4th 700, 720 n.23 (2001) ("[W]e are not to read *Cel-Tech* as suggesting that such a restrictive definition of 'unfair' should be applied in the case of an alleged consumer injury . . . .") *with Scripps Clinic v. Superior Court*, 108 Cal. App. 4th 917, 940 (2003) (requiring, under *Cel-Tech*, that any UCL claim must be tethered to a legislatively declared policy). The Ninth Circuit has observed that these two options—to apply *Cel-Tech* directly to consumer cases and require that the unfairness be tied to a "legislatively declared" policy as in *Scripps Clinic*, or to adhere to the former balancing test as stated in cases such as *Motors, Inc.*—are not mutually exclusive. *Lozano*, 504 F.3d at 736.

funding intended to encourage modification. As to U.S. Bank, Davenport perceives as unfair its failure to investigate the chain of title to Davenport's property, and its failure to recognize the "problem" Davenport perceives in multiple assignments of the beneficiary interest.

Both defendants respond by challenging Davenport's standing to bring a UCL claim. A plaintiff has standing to bring an unfair business practices claim where she alleges that she "suffered injury in fact and . . . lost money or property *as a result* of the unfair competition." Bus. & Prof. Code § 17204 (emphasis added). Although defendants concede, for the sake of argument, that Davenport may rely on the loss of her home at foreclosure to satisfy the "injury in fact" requirement, they insist she has failed to allege a causal connection. In other words, she has not alleged that she lost her home *as a result of* either Litton's unproductive modification discussions or U.S. Bank's purported failure to concern itself with the beneficiary issue. The central reason for the foreclosure remains Davenport's failure to keep current with her monthly mortgage obligation. As the Prior Order emphasized, Litton had no obligation to modify Davenport's loan, and she has not alleged any inculpatory conduct such as the prolonging of discussions by Litton designed to exacerbate the extent of her default. It similarly remains unclear how extra diligence on U.S. Bank's part would have altered the end result, as she has not shown why the failure to record beneficiary assignments affects title.

## V.  CONCLUSION

For the reasons identified here, all of Davenport's claims against Litton and U.S. Bank must be dismissed. In light of settled legal principle favoring liberality on leave to amend, Davenport may amend her SAC, but *only if* she can in good faith allege facts plausibly suggestive of a viable claim for relief. If she cannot do so, she shall file a Third Amended Complaint that contains only those claims lodged against the continuing defendants. In any event, Davenport must file her amended pleading within twenty days of this Order's issuance.

IT IS SO ORDERED.

Dated: 6/3/11

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE